

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. **1:13CR - 084** |
| | : | |
| | : | **J. BECKWITH** |
| v. | : | <u>INDICTMENT</u> |
| | : | 18 U.S.C. § 1035 |
| ABUBAKAR ATIQ DURRANI | : | 18 U.S.C. § 1347 |
| | : | Notice of Forfeiture |

- - - - - - - - - - - - - - - - - - - - - -

**THE GRAND JURY CHARGES THAT:**

### Scheme to Defraud

1. Defendant ABUBAKAR ATIQ DURRANI ("Durrani") is a citizen of the Republic of Pakistan and is a permanent resident of the United States of America.

2. From approximately 2005 to the present, DURRANI has worked as a spine surgeon in and around the Southern District of Ohio, primarily in Cincinnati, Ohio.

3. Beginning in 2009, DURRANI opened a private practice called Center for Advanced Spine Technologies, Inc. ("CAST"). DURRANI is the sole owner of CAST.

4. CAST currently has two offices, one in Evendale, Ohio at 10475 Reading Road, Suite 206, Cincinnati, Ohio, 45241, and one in Northern Kentucky at 6905B Burlington Pike, Florence, KY 41042.

5. From at least 2009 through the present, DURRANI has performed numerous spine surgeries through his private practice, CAST. The surgeries were often performed at different hospitals in the Cincinnati area or through an outpatient surgery facility called

JourneyLite Surgery Center (JourneyLite). The JourneyLite facility is owned in part by DURRANI and is also located at 10475 Reading Road, Cincinnati, Ohio 45241.

6. DURRANI previously had privileges to perform surgeries at Children's Hospital, Christ Hospital, Deaconess Hospital, Good Samaritan Hospital, and West Chester Hospital, but no longer has privileges at any of those hospitals. From approximately 2011 through May 2013, DURRANI primarily performed surgeries at JourneyLite and West Chester Hospital. DURRANI no longer has privileges at West Chester Hospital as of May 2013.

7. Throughout his practice at CAST, DURRANI has provided medical services to recipients of Medicare, Medicaid, Anthem, Humana, United HealthCare, and other healthcare benefit programs as that term is defined in Section 24(b) of Title 18, United States Code.

8. Based on the investigation, beginning in approximately 2009 and continuing through the present, in the Southern District of Ohio and elsewhere, DURRANI derived significant profits by convincing patients to undergo medically unnecessary spinal surgeries and by billing private and public healthcare benefit programs for those fraudulent services.

9. In some circumstances, DURRANI's scheme to defraud resulted in serious bodily injury.

10. The scheme and artifice to defraud that DURRANI devised, executed and attempted to execute included the following patterns and practices at times:

    a. DURRANI would persuade the patient that surgery was the only option, when in fact the patient did not need surgery.

    b. DURRANI would tell the patient the medical situation was urgent and that surgery was needed right away. He would also falsely tell the patient that he/she was at risk of grave injuries without the surgery.

2

c.  For cervical spine patients, DURRANI would often tell a patient that there was a risk of paralysis or the head would fall off if the patient was in a car accident because there was almost nothing attaching the head to the patient's body.

d.  DURRANI often did not read or ignored the radiology reports written by the radiologists for imaging studies that DURRANI ordered (e.g. xrays, CT scans, and MRIs).

e.  DURRANI would provide his own exaggerated and dire reading of the patient's imaging that was inconsistent with or plainly contradicted by the report written from the radiologist. At times, DURRANI provided a false reading of the imaging.

f.  DURRANI would dictate that he had performed certain physical examinations and procedures on patients that he did not actually perform.

g.  DURRANI would order a pain injection for a level of the spine that was inconsistent with the pain stated by the patient or the imaging.  DURRANI also scheduled patients for surgeries without learning or waiting for the results of certain pain injections or related therapies.

h.  DURRANI often dictated his operative reports or other patient records months after the actual treatment.

i.  DURRANI's operative reports and treatment records contained false statements about the diagnosis for the patient, the procedure performed, and the instrumentation used in the procedure.

    j.   When a patient experienced complications resulting from the surgery, DURRANI at times failed to inform the patient of or misrepresented the nature of the complications.

11. As part of the scheme, DURRANI made false statements to colleagues about the success of his surgical practices. He also made false statements to patients about why a surgery would not be performed at a certain hospital. He also made false statements regarding why he no longer practiced at certain hospitals.

12. Many of the patients treated by DURRANI for back and neck pain were left in a worse position due the unnecessary surgeries he performed, as well as the related health care fraud and false statements.

13. As part of this scheme to defraud, DURRANI performed unnecessary procedures and made false statements in relation to lumbar, thoracic, and cervical surgeries.

## COUNT 1
## 18 U.S.C. § 1347

14. The grand jury restates and incorporates paragraphs 1-13 above as if full restated herein.

15. Patient 1, whose identity is known to the grand jury, was a patient of DURRANI. In 2012, DURRANI diagnosed Patient 1 as having instability at the C1-C2 level and recommended a significant fusion surgery. As part of the diagnosis, on March 15, 2012, DURRANI stated that Patient 1 had a large pannus near the C2 level of the neck that was the cause of the pain. DURRANI recommended the surgery based on the purported instability and pannus. The imaging and medical records in fact show that Patient 1 did not have a pannus, did not have instability at that level, and did not need surgery.

4

16. In the case of Patient 1, DURRANI engaged in health care fraud by making false statements to the patient and attempting to perform an unnecessary procedure.

17. In the Southern District of Ohio, in 2012, Defendant ABUBAKAR ATIQ DURRANI knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud, obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of health care benefit programs as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of, billing, and payment for health care benefits, items, and services for Patient 1.

All in violation of Title 18, United States Code, Section 1347.

## COUNT 2
## 18 U.S.C. § 1035

18. The grand jury restates and incorporates paragraphs 1-17 above as if full restated herein.

19. On or about March 15, 2012, in the Southern District of Ohio and elsewhere, defendant ABUBAKAR ATIQ DURRANI, knowingly and willfully made a materially false, fictitious, and fraudulent statements, representations, and writings, namely his diagnosis of a pannus and instability for Patient 1 and statement of surgical necessity, in connection with the delivery of health care benefits, items, and services involving a health care benefit program as defined in 18 U.S.C. § 24(b).

All in violation of Title 18, United States Code, Section 1035.

## COUNT 3
## 18 U.S.C. § 1347

20. The grand jury restates and incorporates paragraphs 1-13 above as if full restated herein.

21. Patient 2, whose identity is known to the grand jury, was a patient of DURRANI. On or about November 8, 2012, DURRANI diagnosed Patient 2 as having instability at the C1-C2 level and recommended fusion surgery. As part of the diagnosis, DURRANI stated that Patient 2 had a large pannus near the C2 level of the neck that was the cause of the pain, even though the patient reported pain at a lower level of the spine. The imaging and other medical records show that, in fact, Patient 2 did not have a pannus, did not have instability at that level, and did not need surgery.

22. In the case of Patient 2, Defendant DURRANI engaged in health care fraud by making false statements to the patient and attempting to perform an unnecessary procedure.

23. In the Southern District of Ohio, in 2012, Defendant ABUBAKAR ATIQ DURRANI knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud, obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of health care benefit programs as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of, billing, and payment for health care benefits, items, and services for Patient 2.

All in violation of Title 18, United States Code, Section 1347.

**COUNT 4**
**18 U.S.C. § 1035**

24. The grand jury restates and incorporates paragraphs 1-13 and 21-23 above as if full restated herein.

25. On or about November 8, 2012, in the Southern District of Ohio and elsewhere, defendant ABUBAKAR ATIQ DURRANI, knowingly and willfully made a materially

false, fictitious, and fraudulent statements, representations, and writings, namely his diagnosis of a pannus and instability for Patient 2 and statement of surgical necessity, in connection with the delivery of health care benefits, items, and services involving a health care benefit program as defined in 18 U.S.C. § 24(b).

All in violation of Title 18, United States Code, Section 1035.

## COUNT 5
## 18 U.S.C. § 1347

26. The grand jury restates and incorporates paragraphs 1-13 above as if full restated herein.

27. Patient 3, whose identity is known to the grand jury, was a patient of DURRANI.
DURRANI diagnosed Patient 3 with rotational instability at the C1-C2 level. DURRANI recommended a posterior spinal fusion with instrumentation at C1-C2 for Patient 3.
DURRANI performed the surgery on Patient 3 on or about December 26, 2012. Imaging and medical records show that Patient 3 did not have instability and did not need surgery.

28. DURRANI also falsely described the instrumentation and procedure to Patient 3 and in the operative report.

29. On or about December 26, 2012, in the Southern District of Ohio, Defendant ABUBAKAR ATIQ DURRANI knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud, obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of health care benefit programs as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of, billing, and payment for health care benefits, items, and services for Patient 3. DURRANI's scheme to defraud resulted in serious bodily injury to Patient 3.

7

All in violation of Title 18, United States Code, Section 1347.

## COUNT 6
## 18 U.S.C. § 1035

30. The grand jury restates and incorporates paragraphs 1-13 and 27-29 above as if full restated herein.

31. On or about September 20, 2012, in the Southern District of Ohio and elsewhere, defendant ABUBAKAR ATIQ DURRANI, knowingly and willfully made a materially false, fictitious, and fraudulent statements, representations, and writings, namely his diagnosis of instability, his statement of surgical necessity, and his description of the procedure for Patient 3, in connection with the delivery of health care benefits, items, and services involving a health care benefit program as defined in 18 U.S.C. § 24(b).

All in violation of Title 18, United States Code, Section 1035.

## COUNT 7
## 18 U.S.C. § 1347

32. The grand jury restates and incorporates paragraphs 1-13 above as if full restated herein.

33. Patient 4, whose identity is known to the grand jury, was a patient of DURRANI. DURRANI diagnosed Patient 4 with rotational instability at the C1-C2 level and claimed that patient 4 had a pannus. DURRANI recommended a spinal fusion at C1-C2 for Patient 4. He performed the surgery on Patient 4 on or about September 9, 2011. The imaging and medical records show that Patient 4 did not have instability, did not have a pannus, and did not need surgery.

34. On or about September 9, 2011, in the Southern District of Ohio, Defendant ABUBAKAR ATIQ DURRANI knowingly and willfully executed and attempted to

execute the above-described scheme and artifice to defraud, obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of health care benefit programs as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of, billing, and payment for health care benefits, items, and services for Patient 4. DURRANI's scheme to defraud resulted in serious bodily injury to Patient 4.

All in violation of Title 18, United States Code, Section 1347.

## COUNT 8
## 18 U.S.C. § 1035

35. The grand jury restates and incorporates paragraphs 1-13 and 33-34 above as if full restated herein.

36. On or about March 17, June 23, and July 21, 2011, in the Southern District of Ohio and elsewhere, defendant ABUBAKAR ATIQ DURRANI, knowingly and willfully made materially false, fictitious, and fraudulent statements, representations, and writings, namely his diagnosis of a pannus and instability for Patient 4 and statement of surgical necessity, in connection with the delivery of health care benefits, items, and services involving a health care benefit program as defined in 18 U.S.C. § 24(b).

All in violation of Title 18, United States Code, Section 1035.

## COUNT 9
## 18 U.S.C. § 1347

37. The grand jury restates and incorporates paragraphs 1-13 above as if full restated herein.

38. Patient 5, whose identity is known to the grand jury, was a patient of DURRANI. DURRANI diagnosed Patient 5 with instability at the C1-C2 level. DURRANI

recommended a posterior spinal fusion with instrumentation for Patient 5 at the C1-C2 level. DURRANI performed the surgery on or about May 24, 2010. Reviews of the imaging by other physicians have confirmed that Patient 5 did not have instability and did not need surgery.

39. On or about May 24, 2010, in the Southern District of Ohio, Defendant ABUBAKAR ATIQ DURRANI knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud, obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of health care benefit programs as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of, billing, and payment for health care benefits, items, and services for Patient 5. DURRANI's scheme to defraud resulted in serious bodily injury to Patient 5.

All in violation of Title 18, United States Code, Section 1347.

## COUNT 10
## 18 U.S.C. § 1035

40. The grand jury restates and incorporates paragraphs 1-13 and 38-39 above as if full restated herein.

41. On or about February 23, and April 22, 2010, in the Southern District of Ohio and elsewhere, defendant ABUBAKAR ATIQ DURRANI, knowingly and willfully made materially false, fictitious, and fraudulent statements, representations and writings, namely his diagnosis of instability for Patient 5 and statement of surgical necessity, in connection with the delivery of health care benefits, items, and services involving a health care benefit program as defined in 18 U.S.C. § 24(b).

10

All in violation of Title 18, United States Code, Section 1035.

### FORFEITURE ALLEGATION 1

Upon conviction of one or more of the offense alleged in Counts 1-5 (health care fraud) of this Indictment, defendant ABUBAKAR ATIQ DURRANI shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, representing the amount of proceeds obtained as a result of the offense, 18 U.S.C.§ 1347, health care fraud.

All in accordance with 18 U.S.C. § 982(a)(7), and Rule 32.2(a), Federal Rules of Criminal Procedure.

### FORFEITURE

### SUBSTITUTE ASSETS

If any of the property described above in Forfeiture Allegation 1, as a result of any act or omission of the defendant:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

11

All pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c).

**A TRUE BILL.**

_____
**Grand Jury Foreperson**

**CARTER M. STEWART**
**United States Attorney**

_____
**ANTHONY SPRINGER**
**Cincinnati Branch Chief**

12